UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| YOLANDA BUXBAUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16 CV 465 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION and ORDER

Plaintiff Yolanda Buxbaum ("Buxbaum" or "plaintiff") brings claims against defendant Nancy A. Berryhill ("defendant") the Acting Commissioner of Social Security, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and the Fair Pay Act of 2009. The matter is now before the court on defendant's motion to dismiss. (DE # 21.) For the reasons set forth below, defendant's motion to dismiss will be granted in part and denied in part.

I.  BACKGROUND

Buxbaum, a self-described "Hispanic female," has been employed by the Social Security Administration (the "SSA") since 1985. (DE # 20 ¶¶ 12, 25.) In 2010, she brought an EEOC complaint against the SSA, which was later denied. (*Id*. ¶ 15.) Buxbaum alleges that after she filed the EEOC complaint, her rights as a Site LAN Coordinator were suspended.  (*Id*. ¶ 17.) She alleges that she was then involuntarily reassigned to the Merrillville Field Office from the Hammond Field Office, on April 8,

2012. (*Id.* ¶ 23.) The reassignment came along with a position change from Operations Supervisor to Management Support Specialist, which caused plaintiff to lose her supervisory duties. (*Id.* ¶¶ 21, 27.)

Buxbaum is currently employed in a GS-12 position. (*Id.* ¶ 13.) She has allegedly applied to GS-13 positions—including Area Administrative Assistant and Lead Social Insurance Administrator—over 37 times. (*Id.* ¶ 28.) However, she has never been selected for any of these positions. (*Id.* ¶ 30.)

Buxbaum also alleges that her boss, Victor Rojas, harasses her by allowing other employees, who are lower in rank, to review her work. (*Id.* ¶ 32.) She also alleges that Rojas refused to conduct her performance review, which was a necessary step for her to apply to other positions. (*Id.* ¶¶ 33, 34.)

Based on these incidents, plaintiff filed an initial complaint on November 2, 2016. (DE # 1.) That was followed by an amended complaint on August 23, 2017. (DE # 20.) Count I of the amended complaint states that defendant has engaged in policies and practices such as (a) maintaining separate lines of progression based on sex and (b) excluding plaintiff and other females from employment based on sex, contrary to Title VII. (*Id.* ¶ 42.) Count II alleges that defendant has engaged in policies and practices such as (a) maintaining separate lines of progression based on race and national origin and (b) excluding plaintiff and other Hispanic individuals from employment based on race and national origin, contrary to Title VII. (*Id.* ¶ 46.) Count III alleges that defendant has engaged in policies and practices made unlawful by the Fair Pay Act of 2009 such as (a)

maintaining separate wage and other compensation scales based on sex and (b) excluding plaintiff and other females from access to equal pay. (*Id.* ¶ 51.) Count IV alleges that defendant has engaged in policies and practices such as (a) excluding plaintiff and other employees with previous EEOC activity from employment and (b) failing to select plaintiff for 37 positions since 2010, contrary to Title VII. (*Id.* ¶¶ 55–61.) Count V alleges that defendant has engaged in retaliatory policies and practices such as (a) subjecting plaintiff and other employees with previous EEOC activity to disparate treatment, so as to create a hostile work environment, and (b) involuntarily transferring plaintiff and other members with previous EEOC activity, contrary to Title VII. (*Id.* ¶¶ 65–72.) Plaintiff also alleges various additional retaliatory policies and procedures against plaintiff and others who opposed the alleged unlawful employment practices. (*Id.* ¶¶ 43, 47, 52, 62.)

On August 30, 2017, defendant filed a motion to dismiss the claims against her pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE # 21.) Plaintiff has responded to the motion, and defendant has replied. (DE ## 26, 28.) Thus, the motion to dismiss is fully briefed and ripe for review.

## II. LEGAL STANDARD

Defendant has moved to dismiss plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. A judge reviewing a complaint under a Rule 12(b)(6) standard must construe it in the light most favorable to the non-moving party, accept well-pleaded facts as true, and draw all

inferences in the non-movant's favor. *Erickson v. Pardus* , 551 U.S. 89, 93 (2007); *Reger Dev., LLC v. Nat'l City Bank,* 595 F.3d 759, 763 (7th Cir. 2010). Under the liberal notice-pleading requirements of the Federal Rules of Civil Procedure, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy Rule 8(a), "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ray v. City of Chicago,* 629 F.3d 660, 662-63 (7th Cir. 2011); *Twombly,* 550 U.S. at 555, 570. A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing "labels and conclusions" and "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir. 1994) among other authorities). As the Seventh Circuit recently explained, a complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). Even if the truth of the facts alleged appears doubtful, and recovery remote or unlikely, the court cannot dismiss a complaint for failure to state a claim if, when the facts

4

pleaded are taken as true, a plaintiff has "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

III. DISCUSSION

Defendant moves to dismiss plaintiff's claims, solely on the grounds that plaintiff's claims were not included in her charges of discrimination filed with the EEOC. (*See* DE # 22.) "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that are not included in her EEOC charge . . . . For allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

In her amended complaint, plaintiff lists two EEOC charges as the basis for her current claims: "EEOC Appeal Number[s] 01-2014-1604 and 01-2015-2902." (DE # 20 ¶ 9.) Plaintiff attaches the EEOC decisions on those appeals (DE ## 20-1, 20-2) to her complaint, but she does not include the underlying EEOC charges themselves. Defendant, extrapolating from the EEOC's decisions, summarizes the EEOC charges as follows:

a. Agency No. CHI-13-0518-SSA/Appeal No. 01-2014-1604 ("the 2013 Charge") contains allegations of discrimination based on race, gender, and prior EEOC activity (reprisal) when Buxbaum was not selected for The Lead Social Insurance Specialist position or the Social Insurance Administrator position, in 2013. (DE # 22 at 2–3 , 7.)

b. Agency No. CHI-12-0111-SSA/Appeal No. 01-2015-2902

5

> ("the 2012 Charge") contains allegations of discrimination based on prior EEOC activity (reprisal) when Buxbaum was reassigned to the office in Merrillliville, Indiana, and her position was changed from Operations Supervisor to Management Support Specialist. (DE # 22 at 3–4 , 7.)

Plaintiff does not contest defendant's characterization of her charges or offer an alternative characterization of their content. (See DE # 26.) Therefore, the court accepts defendant's characterization of the charges.

To a certain extent, the claims in plaintiff's charges of discrimination overlap with the claims in the amended complaint. The claims in the 2013 Charge are reflected in Count I ("Excluding [p]laintiff . . . from employment based on [female] characteristics"), Count II ("Excluding [p]laintiff . . . from employment, because of [her] race and national origin"), and Count IV ("Excluding [p]laintiff . . . from employment" based on "previous EEOC activity . . . rather than on the basis of individual capabilities"). (DE # 20 ¶¶ 42, 46, 56.) The claims in the 2012 Charge are reflected in Count V ("Involuntarily transferring the [p]laintiff . . . as compared to similarly situated employees with no previous EEOC activity"). (*Id*. ¶ 72.) Where the claims in the charge and the amended complaint overlap, plaintiff has not failed to exhaust administrative remedies and her claims may move forward. (*See* DE # 22 at 7 (defendant describing the claims in the 2012 Charge and 2013 charge as "exhaused").)

Plaintiff also argues that even where her current claims are seemingly different from those in the amended complaint, they should be allowed to move forward under the applicable Seventh Circuit rule. (DE # 26 at 2.) "The correct rule to follow in

6

construing EEOC charges for purposes of delineating the proper scope of a subsequent judicial inquiry is that the complaint in the civil action may properly encompass any discrimination like or reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (internal quotation marks and punctuation omitted). "[T]he test of *Jenkins* is satisfied if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek*, 31 F.3d 497, 500.

Regarding the first part of this test, "[t]he claims are not alike or reasonably related unless there is a factual relationship between them." *Id*. at 501. "This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate *the same individuals*." *Id*. (emphasis in original). Meanwhile, "[t]he second part of the test is difficult to apply because it requires speculation as to what the EEOC might or might not discover in the course of an investigation." *Id*. at 500.

Generally, "[c]ourts review the scope of an EEOC charge liberally." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 831 (7th Cir. 2015). Less stringent standards are applied and "technicalities are particularly inappropriate" because in this statutory scheme, "laymen, unassisted by trained lawyers," often initiate the process. *Jenkins*, 538 F.2d at 167. The court will bear this standard of leniency in mind; however, in the case at hand, plaintiff had the assistance of an attorney, at least

when filing the 2013 Charge. (DE # 16-1 at 1.)

Based on the tests and standards outlined above, the court will now examine the claims in plaintiff's complaint that do not directly overlap with plaintiff's EEOC charges, to determine which of the claims must be dismissed. To begin, Count III of the amended complaint—the Fair Pay Act claim—clearly fails the first part of the *Jenkins* test. Discriminatory pay is a distinct form of discrimination that was not mentioned in the EEOC charges. It also entails different conduct than that alleged in the EEOC charges. Therefore, Count III must be dismissed, along with all other claims in the amended complaint for discriminatory compensation.

Count IV of the amended complaint also must be dismissed, in part, where the conduct alleged does not match the conduct alleged in the 2013 Charge. Count IV raises 37 adverse employment decisions in which plaintiff was rejected from positions due to prior EEOC activity. (DE # 20 ¶ 61.) However, only three adverse employment decisions were alleged in the 2013 Charge. (DE # 22 at 3.) Any additional rejections which are not contained in the 2013 charge are not the same conduct and plaintiff cannot bring claims related to those additional rejections.

Furthermore, the hostile work environment claim appearing in Count V of the amended complaint also clearly fails the *Jenkins* test. Hostile work environment claims are distinct from claims alleging discrete discriminatory acts. *See Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014). The 2012 and 2013 Charges address discrete non-promotions and a discrete reassignment. The more wide-ranging hostile

work environment claim was not alleged in the EEOC charges. Therefore, that claim must be dismissed.

Defendant also asks the court to dismiss Counts I, II, IV, and V because each of these counts contains broad allegations regarding "policies and practices." (DE # 22 at 8, 11.) Defendant argues that these claims do not grow out of the EEOC charges and that they exceed the scope of the discrete acts alleged in the charges. (*See id*.) These "policies and practices" claims encompass the majority of plaintiff's amended complaint. The court will now address those claims, and specifically, three issues regarding those claims.

First, although all of these claims relate to acts of discrimination against plaintiff, they also contain allegations regarding victims of discrimination other than plaintiff. For instance, Count I states that defendant's policies and practices included "excluding [p]laintiff *and other females* from employment." (DE # 20 ¶ 42 (emphasis added).) To the extent these "policies and practices" claims implicate discrimination against other employees or people, they must be dismissed. Claims relating to victims of discrimination, other than plaintiff, clearly do not implicate the "same individuals" and "same conduct" from the underlying EEOC charges, which focused solely on discrete discriminatory acts against plaintiff. *See Cheek*, 31 F.3d at 501. Therefore, those portions of Counts I, II, IV, and V fail the *Jenkins* test and the claims are dismissed.

Second, certain portions of the "policies and practices" claims directly implicate the specific conduct contained in the 2012 and 2013 Charges. The court has already

pointed to the specific instances where there is direct overlap between the EEOC charges and the amended complaint. (*See* page six of this opinion); (*see*, *e.g.,* DE # 20 ¶ 46 ("These policies and practices include . . . [e]xcluding [p]laintiff . . . from employment, because of [her] race and national origin.").) Where this is the case, the court will not dismiss these claims, for the reasons stated above.

Third, there are certain portions of the "policies and practices" claims that do not directly overlap with conduct alleged in the EEOC charges, but that, nevertheless, should not be dismissed because they "grow out of" the underlying charges. Specifically, in Count I, plaintiff alleges defendant "has engaged in policies and practices . . . [which] include, but are not limited to maintaining separate lines of progression based on sex, so as to adversely affect [p]laintiff." This allegation is not featured in the 2013 Charge, which alleges that plaintiff was denied employment opportunities based on sex.

However, this claim can reasonably be expected to grow out of an EEOC investigation into the allegations in the 2013 charge. *See Cheek*, 31 F.3d 497, 500. If the EEOC were to investigate why plaintiff was denied employment opportunities, it could potentially discover that the denial was based on some administrative policy, such as a policy to maintain separate lines of progression based on sex. In that sense, the policy alleged in Count I relates to the same conduct complained of in the 2013 Charge, and it grows out of that conduct by providing an explanation of the means of the discriminatory act. Therefore, this claim passes the *Jenkins* test and should not be

dismissed.

The same rationale applies to the similar policy alleged in Count II: "maintaining separate lines of progression based on race and national origin." (*See* DE # 20 ¶ 46.) Therefore, that claim also survives. All other "policies and practices" claims not discussed above in some manner are outside the scope of the 2012 and 2013 Charges and they do not grow out of those charges. Therefore, they are dismissed.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (DE # 21) is **GRANTED in part** and **DENIED in part** as outlined above.

To summarize, only the following claims remain in the case: (1) Count I as it relates to the adverse employment decisions mentioned in the 2013 Charge ; (2) Count II as it relates to the adverse employment decisions mentioned in the 2013 Charge; (3) Count IV as it relates to the adverse employment decisions mentioned in the 2013 Charge; (4) Count V as it relates to the adverse employment decisions mentioned in the 2012 Charge; and, (5) Counts I and II as they relate to policies of maintaining separate lines of progression based on sex, race, and national origin.

All other claims are **DISMISSED.**

                                            **SO ORDERED**.

Date: September 20, 2018

                                    s/James T. Moody
                                    JUDGE JAMES T. MOODY
                                    UNITED STATES DISTRICT COURT